# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Coherent Logix, Inc. | ) ASBCA No. 59725 |
| | ) |
| Under Contract Nos. FA8650-05-C-1825 | ) |
| W911QX-06-C-0002 | ) |
| N00039-08-C-0092 | ) |
| FA8750-05-C-0005 | ) |
| FA9453-05-C-0029 | ) |
| W15QKN-04-C-1159 | ) |
| W15QKN-06-C-0219 | ) |
| W15P7T-07-C-L610 | ) |

APPEARANCE FOR THE APPELLANT:
Daniel C. Minutillo, Esq.
  Minutillo, A Professional Law
  Corporation
  San Jose, CA

APPEARANCES FOR THE GOVERNMENT:
E. Michael Chiaparas, Esq.
  DCMA Chief Trial Attorney
Joseph D. Keller, Esq.
  Trial Attorney
  Defense Contract Management Agency
  Chantilly, VA

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN

In this appeal, Coherent Logix, Inc. (CLX) appeals from the contracting officer's decision not to waive the penalty assessed on unallowable costs included in appellant's 2007 incurred cost submission. CLX has elected to proceed under Board Rule 12.2,[1] Expedited Procedures, and both parties have elected to waive a hearing and submit their cases on the written record pursuant to Board Rule 11.

---

[1] The Contract Disputes Act, implemented by Board Rule 12.2, provides that this decision shall have no value as precedent, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside.

## FINDINGS OF FACT

CLX is a small business concern based in Austin, Texas. Its principal business focus is creating technology for high performance data processing using a scalable embedded processor platform. (Compl. ¶ 1) CLX, during the period relevant hereto was performing a number of flexibly priced contracts for the Air Force (Air Force Research Laboratory), Army (RDECOM, Picatinny, and CECOM), and Navy (SPAWAR) (R4, tab 5 at G-63). Of the eight contracts being performed by CLX, six exceeded the statutory dollar value threshold and were treated as "covered contracts" under FAR 42.709 (app. br. at 7; R4, tab 5 at G-63).

On 13 August 2008, CLX submitted its final indirect cost rate proposal for its fiscal year ending 31 December 2007 (compl. ¶ 11). On 19 June 2013, CLX submitted a revised final indirect rate cost proposal for 2007 (R4, tab 5 at G-32). The Defense Contract Audit Agency (DCAA) questioned certain overhead and general and administrative ("G&A") costs and found $82,396 of such costs to be expressly unallowable and subject to penalty (id. at G-64). A Level One penalty was recommended to be assessed (id.).[2]

The questioned expressly unallowable costs consisted primarily of patent legal fees in the amount of $68,894 (R4, tab 5 at G-64). The remainder of the questioned expressly unallowable costs included costs of exhibition at trade shows (advertising costs), travel costs exceeding per diem, undocumented first class airfare, and costs of meals determined to be entertainment (id. at G-40).

On 21 November 2014, the Defense Contract Management Agency (DCMA) administrative contracting officer (ACO) issued his final decision finding that CLX had included expressly unallowable costs in its 2007 submission, consisting of the $68,894 in patent legal fees and $13,204 in other expressly unallowable costs (R4, tab 6 at G-110-11). The ACO assessed a Level One penalty of $73,912 on the portion of these costs allocable to covered contracts, and added interest of $17,239, for a total of $91,151. He also stated that while he had carefully considered CLX's request for waiver of the penalty under FAR 42.709-5(c), he had determined that CLX's request did not meet the FAR criteria for waiver of the penalty. (Id. at G-113-14) In particular, the ACO stated that the unallowable costs were not inadvertently incorporated into the proposal, but were included because CLX believed them to be allowable (id.)

---

[2] FAR 42.709-1 prescribes a penalty of 100 percent of the amount of expressly unallowable costs allocated to covered contracts (Level One); and a penalty of twice the amount of unallowable costs allocated to covered contracts if the cost had been determined to be unallowable prior to proposal submission (Level Two).

2

CLX timely appealed to this Board, alleging (1) the ACO's final decision was untimely under the Contract Disputes Act's six-year statute of limitations, 41 U.S.C. § 7103(a)(4); and (2) the ACO erred in declining to waive the penalty. CLX does not contest the underlying issues of the unallowability of the costs or the government's imposition of a penalty, only the ACO's decision not to waive the penalty. (Compl. ¶¶ 16-34) Further, appellant has chosen to submit argument and evidence limited to the patent legal costs.

## DECISION

*Is the Government's Claim Barred?*

Whether or not a party's claim has been asserted within the Contract Disputes Act's six-year statute of limitations is no longer a jurisdictional issue. *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320-22 (Fed. Cir. 2014). We treat CLX's assertion that the government's final decision on its claim for penalties was issued after the six-year period passed as an affirmative defense, on which CLX has the burden of proof.

CLX submitted its original final indirect cost rate proposal on 13 August 2008. The ACO issued his final decision on 21 November 2014. The question is whether the government's claim accrued at the time the original proposal was submitted. If so, the government's claim for penalty is untimely. 41 U.S.C. § 7103(a)(4).

The parties have briefed this issue, focusing only on the patent legal costs. CLX argues that the government's claim accrued no later than 13 August 2008, because the government had conducted audits of prior years' final indirect rate cost proposals during which it had access to detailed cost records involving the legal fees at issue. (App. br. at 5) In support of this contention, CLX submitted for the record the affidavit of Donald Gorsuch, its Vice President for Finance and Administration. Mr. Gorsuch stated as follows:

> Included in the 2005 ICE Schedules A, B and C are Legal costs totaling $21,500 (not related to patents) and Amortization costs totaling $237,543 (all related to patents amortization IP). Our General Ledger accounting records for 2005 shows [sic] the $21,500 and the $237,543 total accumulated Amortization, all of which tie to the amounts in the 2005 ICE Schedules B and C. On the left side of the General Ledger pages are the transactions and accounts, which clearly show legal fees, Meyertons (our patent attorneys), and amortization IP. The General Ledger was readily available to the Government Auditors to verify the

3

detailed amounts in the 2005 ICE and the Amortization amount for patents was reviewed by Trista Franklin, the DCAA Auditor and all but $41,028 of the claimed amount of $237,543 was accepted and paid by the Government.

....

...[CLX's 2006 final indirect cost rate proposal included] legal costs totaling $25,998 and Amortization IP (all related to patents) costs totaling $2,733 and $24,599.... Our General Ledger accounting pages for 2006 show the [$25,998] and the $27,331.94 (the sum of $2,733 and $24,599) all of which tie to the amounts in the 2006 Revised ICE. On the left side of the General Ledger pages are the transactions and accounts which clearly show legal fees, Meyertons (our patent attorneys), patents and amortization IP. The General Ledger was readily available to the Government Auditors to verify the detailed amounts in the 2006 Revised ICE[.] All of the legal costs claimed by CLX in its 2006 Revised ICE, including patent-related costs, were subsequently accepted by the Government and reimbursed to CLX without issue.

(Gorsuch aff. ¶¶ 6, 8) (Citations omitted)

Examination of the supporting records attached as exhibits to Mr. Gorsuch's affidavit reveals that the patent legal fees shown in CLX's General Ledger were not included in claimed legal costs for either 2005 or 2006. In 2005 CLX claimed legal costs of $21,500; these did not include Meyertons' fees, which appear in the General Ledger under IP (presumably shorthand for "Intellectual Property"). (Gorsuch aff., ex. A at 6-7, 9) In 2006, CLX claimed legal costs of $25,998; these did not include Meyertons' fees, which appear in the General Ledger as reclassified from legal fees to IP (id., ex. B at 6-9). Nor did CLX claim the patent legal fees as part of Amortization IP for either 2005 or 2006. In 2005, CLX claimed $237,543 for amortization IP; these costs did not include Meyertons' fees (id., ex. A at 7-8). In 2006, CLX claimed $27,332 (rounded) for Amortization IP; these costs did not include Meyertons' fees (id., ex. B at 10). From the record, we cannot conclude that CLX claimed any of its patent legal fees for reimbursement in either 2005 or 2006, and we note that Mr. Gorsuch does not expressly say so.

CLX's indirect cost submission for 2007 is a different story. CLX's 2007 final indirect rate cost proposal, both the original submitted on 13 August 2008 and the revised proposal submitted on 19 June 2013, included patent legal fees as part of total claimed legal fees of $89,196. (Gorsuch aff. ¶ 10) General Ledger entries for 2007 confirm that Meyertons' legal fees were included (id., ex. C at 5-6, ex. D at 5-6).

4

However, there is nothing in the record to indicate that this fact would have been apparent to the government from a review of the submitted proposal, which simply listed "Legal Fees" of $89,196 on Schedule B.

Appellant has also submitted the affidavit of Gary Baggett, its Controller. Mr. Baggett states that more than six years prior to the issuance of the ACO's decision, CLX was "audited by the Government multiple times where detailed information was made available to the Government regarding the patent-related legal costs at issue." He further states that the "patent costs were not identified to me as being unallowable or I would have taken corrective actions" to not include the costs in subsequent proposals. (Baggett aff. ¶ 3) Notably, Mr. Baggett states only that CLX made books and records available in prior years that showed its patent-related legal costs, but not that patent-related legal costs were included in CLX's final indirect cost rate proposal for any year prior to its 2007 proposal.

The government argues that its claim could not have accrued before 1 August 2013, when CLX provided the General Ledger detail showing the patent legal costs to the DCAA (gov't br. at 4). Diane Chang, a DCAA auditor, provided an affidavit in which she states that DCAA requested the General Ledger detail from CLX on 24 July 2013 and received it on 1 August 2013 (Chang aff. ¶¶ 4-5). Ms. Chang also states that she has searched the DCAA files and did not find General Ledger detail anywhere in CLX's 13 August 2008 submission. She further states that the only information CLX provided on legal costs prior to 1 August 2013 was the single line item identifying only generic "legal services" in the amount of $89,196. (*Id.*, ¶¶ 6-7)

Based on the foregoing, we cannot conclude that the government had any reason to anticipate that CLX would claim reimbursement for patent legal costs in 2007. CLX has not met its burden of proving that the government's claim accrued on 13 August 2008 or at any other time before DCAA received the underlying General Ledger detail on 1 August 2013. *Cf. Combat Support Associates*, ASBCA Nos. 58945, 58946, 14-1 BCA ¶ 35,782, *vacated on other grounds on recon.*, slip op., 16 March 2015 (government claim did not arrive at time of initial incurred cost submission, but only after supporting data was submitted from which it could conclude that certain claimed costs were unallowable). We hold that the government's claim is not barred.

*Did the ACO Err in Not Waiving the Penalty?*

FAR 42.709-5 provides that the cognizant contracting officer "shall" waive any penalty on unallowable costs when:

> (a) The contractor withdraws the proposal before the Government formally initiates an audit of the proposal and

5

the contractor submits a revised proposal [parenthetical omitted];

(b) The amount of the unallowable costs under the proposal which are subject to the penalty is $10,000 or less (i.e., if the amount of expressly or previously determined unallowable costs which would be allocated to [covered contracts] is $10,000 or less); or

(c) The contractor demonstrates, to the cognizant contracting officer's satisfaction, that—

(1) It has established policies and personnel training and an internal control and review system that provide assurance that unallowable costs subject to penalties are precluded from being included in the contractor's final indirect cost rate proposals [parenthetical omitted]; and

(2) The unallowable costs subject to the penalty were inadvertently incorporated into the proposal; *i.e.*, their inclusion resulted from an unintentional error, notwithstanding the exercise of due care.

In this case, appellant does not argue that it either withdrew the proposal prior to the formal initiation of audit, or that the amount of expressly unallowable costs allocable to covered contracts was $10,000 or less. Appellant makes two primary arguments relying on the two-pronged test of FAR 42.709-5(c): (1) that it "inadvertently" included the patent legal costs in its 2007 proposal in reliance on the government's approval of those costs in prior proposals; and (2) it has instituted remedial measures in terms of policies, personnel training, and an internal control and review system that provide assurance that unallowable costs subject to penalties are precluded from being included in CLX's final indirect cost rate proposals.

Under the second prong of FAR 42.709-5(c), CLX must establish to the contracting officer's satisfaction that the "unallowable costs subject to the penalty were inadvertently incorporated into the proposal; *i.e.*, their inclusion resulted from an unintentional error, notwithstanding the exercise of due care." FAR 42.709-5(c)(2).

Appellant argues that it included patent legal costs in its 2005 final indirect cost rate proposal, either as part of legal costs or as part of Amortization IP, because it believed at the time that such costs were allowable (app. br. at 14). It also argues that it included patent legal costs in its 2006 proposal (app. br. at 15). As to both years,

appellant claims that patent legal costs were reimbursed by the government with no indication that they were unallowable (*id.*).

However, the record in this appeal contains no evidence to support CLX's assertions. Indeed, as noted above, the evidence submitted by CLX establishes that in 2005 and 2006, CLX did *not* include patent legal costs in either legal costs claimed OR Amortization IP costs claimed, and there is no evidence that CLX otherwise claimed patent legal costs for reimbursement in either year. From the record, we must conclude that 2007 was the first year that CLX claimed patent legal costs for reimbursement. Additionally, the record contains no evidence that the government approved patent legal costs for payment in 2005 and 2006.

FAR 31.205-30(c), Patent Costs, provides as follows: "Other than those for general counseling services, patent costs not required by the contract are unallowable." FAR 31.205-30(b) defines general counseling services related to patents as including "advice on patent laws, regulations, clauses, and employee agreements." CLX does not contend that its patent legal costs were either for general counseling services or required by any of its contracts. (Compl. ¶¶ 16-34)

The patent legal costs at issue are not the type of cost over which the parties could reasonably differ as to allowability. Rather, the cost principle is clear that unless the costs are of a general counseling nature or required by the contract, they are unallowable. CLX concedes that its patent legal costs included in its 2007 indirect cost rate submission were expressly unallowable and that it intentionally submitted the costs for reimbursement. It bases its claims of inadvertency and the exercise of due care on the government's prior approval of such costs for reimbursement, but the record contains no evidence that CLX previously submitted or the government previously approved similar patent legal costs for payment. We find that CLX has not established that the costs were inadvertently incorporated into its 2007 proposal, or that it exercised due care.

CLX also argues that the remedial measures CLX adopted after being notified that it had submitted expressly unallowable costs satisfy the first prong of the test under FAR 42.709-5(c). However, we do not decide this question, since both prongs of the test must be satisfied and we have already concluded that CLX has not met the second prong of the test.

## CONCLUSION

For the reasons stated, the appeal is denied.

Dated: 2 April 2015

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59725, Appeal of Coherent Logix, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8